IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOMINICK PALAMARA,

        Plaintiff,

v.                                                                               No. 13-CV-01109 WJ

LOS ALAMOS NATIONAL SECURITY, LLC;
LANS WELFARE BENEFIT PLAN FOR RETIREES;
and LANS WELFARE BENEFIT PLAN FOR EMPLOYEES,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S STATE LAW CLAIMS AND REMEDIES

THIS MATTER comes before the Court upon the Defendants' Motion to Dismiss Plaintiff's State Law Claims and Remedies (Doc. 17) filed on March 10, 2014. The Plaintiff Dominick Palamara ("Palamara") sued the Defendants for recovery based on claims under breach of contract, equitable estoppel, and ERISA, constituting counts 1-3 respectively. Defendants assert ERISA preemption in bringing this 12(b)(6) motion to dismiss Plaintiff's counts 1 and 2 as well as the requested remedies which fall outside the scope permitted under ERISA. However, the Defendants do not challenge Plaintiff's third claim regarding recovery under ERISA.

Upon reviewing the applicable law and arguments presented by both parties,[1] the Court finds that the Defendants' motion to dismiss should be GRANTED in part and DENIED in part.

---

[1] While Plaintiff filed his Response on March 27, 2014, Defendants have failed to reply. The Court was given no notice that parties had agreed to an extension as required by D.N.M. LR-CIV 7.4(a).

**BACKGROUND**

**I.      The Facts**

Starting February 22, 1968, Plaintiff worked for Honeywell FM&T ("Honeywell") on Department of Energy ("DOE") Prime Contracts. Honeywell is a minority owner of Babcock & Wilcox Pantex, LLC ("Pantex"). After about 32 years, Plaintiff was offered a transfer to Pantex, which included a statement that his years of service at Honeywell will be transferred to Pantex. Plaintiff accepted the offer and began working for Pantex on February 1, 2001.

Pantex is a minority owner of Los Alamos National Security ("LANS"). In 2006, Plaintiff was offered another transfer to work for LANS which also included the guarantee that his accrued years of service, which now totaled 38.27 years, would transfer to LANS. Ben Glover ("Glover") who is the HR director for LANS, affirmed to Plaintiff that for retirement and health-related benefit purposes, his years of service would transfer to LANS in the same way that they had transferred from Honeywell to Pantex. Before Plaintiff signed on with the LANS benefit plan, Glover confirmed that all 38 years of Plaintiff's service would transfer to and be recognized by LANS.

Once transferred, Plaintiff verified that his years of service had been transferred using the human resources ("HR") system. The LANS HR computer system indicated that all of his years had transferred. He also confirmed the transfer through oral discussion with various LANS HR employees. Moreover, LANS repeatedly recognized Plaintiff for his decades of service. For example, LANS congratulated Plaintiff with a gift and certificate when he completed 40 years of service.

In spring of 2012, Plaintiff contacted LANS HR regarding his eligibility for the Voluntary Separation Program ("VSP"). HR confirmed that he is eligible based on their records

which showed that he had 43.8333 accumulated years of service, entitling him to a lump sum payment for six month's salary or about $110,000 if he retired in April 2012. HR also confirmed that Plaintiff was eligible for the LANS Retiree Health and Welfare Plan without any supplemental payments.

But hours before Plaintiff's retirement application under VSP was finalized, he was contacted by LANS HR Manager, Donna Hampton who told him that he would only be credited with six years of service, which would qualify him for only a small VSP payment and would oblige him to pay approximately $600 a month in additional supplemental payments for his ongoing health benefits after retirement. Upon hearing this, Plaintiff withdrew his VSP documents and continued to work.

Later, LANS admitted that its interpretation of the plan documents was incorrect and will credit Plaintiff his years at LANS (6-7 years) and Pantex (5-6 years), but not his years at Honeywell (32 years).

## II.      Legal Standard

The standard for dismissal under Rule 12(b)(6) is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The sufficiency of a complaint is a question of law, and a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## DISCUSSION

### I.     The Court Need not Convert this 12(b)(6) Motion into a Motion for Summary Judgment

Defendants have submitted an administrative record containing various documents including the Transfer in Benefits Packet, emails, and the two benefit plans at issue here. *See* Doc. 16 (Notice of Lodging Administrative Record). Defendants ask the Court to take judicial notice of the administrative record, citing *Campos v. Las Cruces Nursing Center*, 828 F. Supp. 2d 1256, 1262 n.3 (D.N.M. 2011) (stating that court may take judicial notice of New Mexico Human Rights Division's administrative record for purposes of motion to dismiss).

Plaintiff responds that the *Campos* court relied on the administrative record for the sole purpose of addressing the "jurisdictional question of exhaustion of administrative remedies." Further, *Campos* agreed with *Van Woudenberg ex rel. Foor v. Gibson*, where the Tenth Circuit ruled that "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." 211 F.3d 560, 568 (10th Cir. 2000). In a footnote, the *Campos* court agreed that it can rely on Plaintiff's attached copies of the charges without converting the motion to dismiss into a motion for summary judgment. 828 F.Supp. 2d at 1262.

Neither *Campos* nor *Van Woudenberg* suggests that the Court may rely on substantive facts contained in the administrative record without converting the motion to dismiss into a motion for summary judgment. Pursuant to Rule 56(d), this Court shall not consider the extrinsic material submitted by Defendants because the Plaintiff has alleged sufficient facts for the Court to address this motion without relying on the administrative record.

## II.     ERISA Preempts Plaintiff's Breach of Contract Claim (Count I)

Defendants challenge the Plaintiff's breach of contract claim using two different approaches. First, Defendants rely on various documents in the administrative record to show that LANS provides severance pay through its LANS Welfare Benefit Plan for Employees ("Employee Plan") and retiree health benefits through its LANS Welfare Benefit Plan for

Retirees ("Retiree Plan"). Defendants claim this is relevant because the Plaintiff's breach of contract claim seeks damages regarding loss of severance pay and retiree health benefits. Defendants argue that since both the Employee and Retiree Plans are governed by ERISA, and ERISA preempts breach of contract theories, it must also preempt Plaintiff's breach of contract theory. *See Metropolitan Life*, 481 U.S. 62, 64 (1987). However, because Defendants may not rely on materials outside the pleading documents in a 12(b)(6) motion, the Court shall not consider this argument.

Next, Plaintiff's Complaint alleges that "LANS breached its contract when it refused to recognize the accrued years of service described *in the plan documents*" (emphasis added). These "plan documents" refer to the "LANS' Retiree Health and Welfare Plan," *see* Doc. 1, ¶ 29, also known as the LANS Welfare Benefit Plan for Retirees or the Retiree Plan. *See* Doc. 18.

Defendants assert that by Plaintiff's own admission in the quoted language, ERISA applies to Plaintiff's breach of contract claim because the factual basis of the claim involves an employee benefit plan. *See Metropolitan Life Ins. Co.*, 481 U.S. at 62 (finding that ERISA preemption applies to common law contract and tort claims if the factual basis of the claim involves an employee benefit plan). The Tenth Circuit recognized that in 29 U.S.C. § 1144(a), Congress established ERISA preemption of "all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Kelso v. General American Life Ins. Co.*, 967 F.2d 388, 390 (10th Cir. 1992). Section 1144(a) is "deliberately expansive," and the statutory phrase "relate to" is given a "broad common-sense meaning." *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 508 (10th Cir.1991). A law relates to a benefit plan "if it has a connection with or reference to such a plan." *Kelso* 967 F.2d at 390.

The Plaintiff responds that the basis of his breach of contract claim is the Voluntary Separation Program ("VSP"), which was supposed to provide Plaintiff with a lump sum of money upon retirement. Asserting that Defendants have not shown that the VSP is "encompassed within the severance provisions of the ERISA plans," Plaintiff asks for the opportunity to conduct discovery on the internal structure of LANS' ERISA plans and the VSP before this claim is reviewed under a 12(b)(6) or summary judgment motion. Doc. 19.

Plaintiff's request is not viable. His Complaint states that "LANS offered Mr. Palamara a contract which included certain health benefits under the Retiree Health and Welfare Plan, which benefits were defined under the plan documents and interpreted by the LANS Human Resource Manager as recognizing all of Mr. Palamara's accrued years of service." Doc. 1, ¶ 29. The Plaintiff continues that "LANS breached its contract when it refused to recognize the accrued years of service described in the plan documents…" leading Plaintiff to suffer damages, "including but not limited to…the loss of the opportunity to retire early and take the VSP payment…" *Id.*, ¶¶ 31-2.

The Complaint demonstrates that the Plaintiff's breach of contract claim is not based on the VSP, but instead on the Defendants' failure to recognize the Plaintiff's accrued years of service described in the plan documents. Plaintiff's loss of VSP payment is a consequential damage of the Defendants' alleged breach of contract. Regardless of what additional facts the Plaintiff may attain pursuant to discovery, the statements in Plaintiff's Complaint *already* meets the very low "relates to" threshold that ERISA mandates before preemption is triggered. In other words, the expansive interpretation of the "related to" phrase gobbles up any nuanced claim Plaintiff may make about whether VSP may or may not actually be a severance plan because

Plaintiff's breach of contract claim already "relates to" the Retiree Plan—that is, an "employee benefit plan."

ERISA governs the Plaintiff's breach of contract claim, and therefore this claim is dismissed without prejudice.

### III.     Plaintiff's Equitable Estoppel Claim has Merit (Count II)

The Plaintiff has alleged that the language in the plan documents is at least ambiguous, if not clear in stating that his accrued years of service from all prior parent companies must be credited. Even Glover and HR employees interpreted the plan documents to mean that Plaintiff's years of service accumulated from Honeywell and Pantex will be transferred to LANS. On the other hand, Defendants interpret the language to mean that only the years from Pantex, Plaintiff's immediately preceding parent company, may be transferred. The Court must accept as true all of Plaintiff's well-pled factual allegations in a 12(b)(6) motion to dismiss. *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009), and the Plaintiff has pled sufficient facts to establish that the plan documents were ambiguous.

Defendants present essentially the same argument made in count I—that because count II of Plaintiff's Complaint asserts a claim of equitable estoppel based on alleged representations of the "plan documents," Plaintiff's equitable estoppel claim "relates to" an employee benefit plan, and ERISA preemption applies. *See* Doc. 1, pg. 6-7.

In support, Defendants cite *Straub v. Western Union Telegraph*, where the Tenth Circuit found that oral agreements and representations may not modify the express terms of an ERISA-governed employee benefit plan through the common law doctrine of estoppel. 851 F.2d 1262, 1265 (10th Cir. 1988); *see Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1485 (10th Cir. 1994) (finding that "[w]here the written language of a plan is clear…any representation that

7

is contrary to [the written] language [of an ERISA plan] can be viewed only as a purported modification of the plan and, hence, preempted by ERISA").

However, the Defendants miss the point here. They discuss instances where the explicit language of the plan contradicts the oral representations the employer made to the plaintiff. Here, Plaintiff is not attempting to enforce an oral promise made to him that contradicts the explicit terms of the plans. Rather, Plaintiff claims that the express terms of his plans were ambiguous and that the employer had interpreted those terms to mean that the Plaintiff gets credit from LANS for all his accrued years of service performed on DOE M&O contracts. *See Alday v. Container Corp. of America*, 906 F.2d 660, 666 (11th Cir. 1990) (*cert. denied,* 498 U.S. 1026 (1991) (finding an exception to ERISA preemption where (1) "the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect," and (2) "representations are made to the employee involving an oral interpretation of the plan").

While the Tenth Circuit has not explicitly recognized the estoppel theory outlined in *Alday*, it strongly alluded to adopting a similar theory in *Averhart* when it held that ERISA preempts the Plaintiff's estoppel theory because "no ambiguous term in the Plan was identified as a basis for the estoppel theory." 46 F.3d at 1486. The *Averhart* court then cited *Alday* which recognized estoppel claims where (1) "the terms of a plan are ambiguous" and (2) "the employer['s] communications constituted an interpretation of that ambiguity." *Averhart*, 46 F.3d at 1486.

Plaintiff's allegations that the plan documents were ambiguous and that the employer's agents represented to Plaintiff an interpretation of that ambiguity meets the *Alday* test. Hence, ERISA's preemption is inapplicable here. To permit otherwise would give employers the license to swindle employees from the benefits they earned. Although the Tenth Circuit has not yet

expressly adopted the equitable estoppel exception to an ERISA preemption, *Averhart* strongly suggests that the Tenth Circuit is ready to adopt the test once the opportunity arises. The facts in this case present such an opportunity. Accordingly, Defendants' motion to dismiss Plaintiff's claim of equitable estoppel is DENIED.

## CONCLUSION

The Court finds that ERISA preempts the Plaintiff's breach of contract claim but not his equitable estoppel claim. Thus, for the reasons articulated in this memorandum opinion, the Court GRANTS in part and DENIES in part the Defendants' 12(b)(6) motion to dismiss Plaintiff's counts I and II.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE